`UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

PATRICIA Mc DONALD,

   Plaintiff,

v.

ROYAL CARIBBEAN CRUISES,
LTD., a foreign corporation doing
business in Florida

   Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, PATRICIA Mc DONALD, by and through undersigned counsel, sues the Defendant, ROYAL CARIBBEAN CRUISES, LTD., a foreign corporation, doing business in Florida, (hereinafter referred to as "ROYAL CARIBBEAN"), for damages and alleges:

**JURISDICTION, PARTIES, AND VENUE**

1. This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2. Federal subject matter jurisdiction arises under and exists by virtue of diversity of citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state.

3. Federal subject matter jurisdiction also arises under and exists by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C.§ 1333, and is being filed in the United States District Court for the Southern District Court, as required by the forum and venue selection clause of the Passenger Contract Ticket issued by Defendant ROYAL CARIBBEAN.

4. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), as ROYAL CARIBBEAN maintains its base of operations in this District and is engaged in and doing business in Miami-Dade County, Florida.

5. The Plaintiff, PATRICIA Mc DONALD, is a resident of the State of Texas.

6. Defendant, ROYAL CARIBBEAN, is authorized to do business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade County, Florida.

7. At all times material hereto, Defendant, personally and/or through an agent, subsidiary, and/or parent company, in the County and in the District in which this Complaint is filed:

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

    b. Had an office or agency in this state and/or county; and/or

    c. Engaged in substantial activity within this state; and/or

    d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

8. Defendant, ROYAL CARIBBEAN, at all relevant times, owned and operated the cruise ship *M/S Radiance of the Seas*.

9. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## **ALLEGATIONS COMMON TO ALL COUNTS**

10. On or about September 17, 2015, Plaintiff was a fare-paying passenger aboard the *M/S Radiance of the Seas.*

11. On or about September 17, 2015, the Plaintiff, PATRICIA Mc DONALD, while embarking the ship in Hilo, Hawaii, was caused to slip and fall on the wet deck near the gangway, caused as a result of Defendant, ROYAL CARIBBEAN'S, failure to provide a rubber mat or other non-skid material, which created a hazardous and dangerous condition to passengers, including Plaintiff.

12. Defendant, ROYAL CARIBBEAN, at all relevant times, breached its duties to exercise reasonable care under the circumstances; and breached its duty to warn the Plaintiff of any known or reasonably foreseeable hazardous or unsafe conditions existing on the wet metal ramp of the subject vessel, by failing to maintain, inspect, clean-up, warn, rope off, place rubber mats or other non-skid flooring or correct the hazardous condition as above alleged, causing severe injuries, as more fully described hereinafter.

13. On or about September 17, 2015, the Plaintiff was injured while entering the vessel and Defendant, ROYAL CARIBEAN, had a higher duty of care to provide safe ingress and egress to the vessel. *Vierling v. Celebrity Cruises*, 339 F.3d 1309, 1319-20 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the 'slightest negligence' renders a carrier liable). The cruise line has a duty to provide safe ingress and egress to and from the ship. *Tittle v. Aldacosta*, 544 F.2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F.2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So.2d 853 (Fla. 3DCA 2004); and *Chan v. Society Expeditions*, 123 F.3d 1287

(9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D.Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F 3rd 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D.Fla.), citing *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1319 (11th Cir. 2003).

14. The Defendant breached those duties and was negligent by

    a. Failing to keep the gangway and ramp at issue in a dry and safe condition;

    b. Failing to maintain said gangway and ramp with non-skid or other mat or rug material, knowing that passengers would track rain into the ship;

    c. Failing to maintain said gangway and ramp in a good condition to allow normal and safe foot traffic;

    d. Failing to inspect for, and to observe on a reasonably frequent basis, changes in conditions of the gangway and ramp;

    e. Failing to comply with ANSI regulations requiring proper slip-resistant flooring or properly secured carpeting on the gangway and ramp;

    f. Failing to properly and reasonably monitor and control the activities of people in an area, especially an area where Defendant knows is an area of high traffic and continuous problems;

    g. Failing to prevent distractions to invitees and failure to design a facility or an operation in the facility which does not have distractions to customers which would cause accidents;

    h. Failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one in this case;

     i. Allowing an ongoing, recurring, continuous and/or repetitive problem to occur or to remain on the premises which would cause accidents or injuries;

     j. Providing negligent maintenance to the area or to the premises;

     k. Failing to otherwise maintain the area and the premises in a safe and reasonable manner;

     l. Failing to comply with applicable standards, statutes, and/or regulations the violation of which is negligence per se and/or evidence of negligence;

     m. Failing to ensure that the applicable handrail and detectable warnings at gangway and ramp;

     n. Failing to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence; and

     o. Failing to otherwise provide its passengers with a safe place to walk.

     p. The Defendant created a dangerous condition on the subject ship and allowed the dangerous condition to exist thereby causing an accident on the date referenced above in which the Plaintiff was severely injured.

15. The Defendant either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

16. The Defendant had constructive knowledge of the dangerous condition by, *inter alia*, (a) the length of time the dangerous condition existed; (b) the size and/or nature of the dangerous condition; and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

17. In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent maintenance; and/or (b) engaged in and was guilty of negligent methods of operations.

18. The negligent condition was created by the Defendant; and was known to the Defendant; and had existed for a sufficient length of time so that Defendant should have known of it; and was a continuous or repetitive problem thus giving notice to the Defendant.

19. The negligent condition occurred with sufficient regularity so as to be foreseeable by the Defendant, and should have been foreseeable by the Defendant.

20. As a result of the Defendant's negligence, the Plaintiff has suffered bodily injury resulting in economic damages in the past and in the future including but not limited to loss of wages and income, loss of the ability or potential to earn money in the future, medical expenses including but not limited to the expense of physicians, hospitalization, medical and nursing care and treatment, surgical procedures, and physical therapy, and non-economic damages in the past and in the future including but not limited to pain, suffering, disability, physical impairment, loss of important bodily functions, scarring, disfigurement, mental anguish, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant for economic damages in the past and in the future including but not limited to loss of wages and income, loss of the ability or potential to earn money in the future, medical expenses including but not limited to the expense of physicians, hospitalization, medical and nursing care and treatment, surgical procedures, and physical therapy, and non-economic damages in the past and in the future including but not limited to pain, suffering, disability, physical impairment, loss of

important bodily functions, scarring, disfigurement, mental anguish, and loss of capacity for the enjoyment of life, all court costs, all interest under the maritime law or otherwise which accrues from the date of the incident described herein, and demands trial by jury of all issues so triale as a matter of right, and any and all other damages which the Court deems just or appropriate.

### COUNT II - VICARIOUS LIABILITY FOR NEGLIGENT MEDICAL CARE
### (ACTUAL AGENCY – RESPONDEAT SUPERIOR)

21. Plaintiff realleges and reavers paragraphs 1 – 20, as though fully set forth herein.

22. That the names of the doctor and nurse aboard the *M/S Radiance of the Seas*. who treated the Plaintiff are unknown, and hereinafter will be referred to as "doctor" and "nurse" respectively herein.

23. That at all times material, the doctor was employed by the Defendant, ROYAL CARIBBEAN, as its ship's physician and was at all times material acting within the scope and course of employment.

24. That at all times material, the nurse was employed by the Defendant, ROYAL CARIBBEAN, and was at all times material acting within the scope and course of employment.

25. That the Defendant, "ROYAL CARIBBEAN", promotes its medical staff and represents them as being their employees through brochures, internet advertising, and on the vessel.

26. That "ROYAL CARIBBEAN" held out its staff, including its doctor and nurse, as being direct employees or its actual agents.

27. That at all times material, the Defendant, "ROYAL CARIBBEAN", held out its medical staff, including its doctors and nurses, as being its employees who work in the Defendant's "medical centers" on the vessel.

28. That the Defendant, "ROYAL CARIBBEAN", promotes its medical staff and represents them as being their employees through brochures, internet advertising, and on the vessel.

29. That "ROYAL CARIBBEAN" held out its staff, including its doctor and nurse, as being direct employees or its actual agents.

30. That the Defendant, "ROYAL CARIBBEAN", promotes the idea that the medical staff who work in its "medical centers" are employed by the cruise line as part of a marketing tool to induce passengers such as the Plaintiff to buy cruises on its ships, particularly because the cruise line goes to various foreign ports which may not have adequate medical care.

31. That "ROYAL CARIBBEAN" manifested to the Plaintiff in this case that its medical staff, including its doctor and nurse, were acting as its employees and/or actual agents in various ways, including but not limited to the following:

32. The doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers;"

33. That the "medical centers" are owned and operated by "ROYAL CARIBBEAN", which pays to stock the "medical centers" with all supplies, various medicines and equipment; and,

34. That the passenger is billed directly by "ROYAL CARIBBEAN" through the passengers' Sign and Sail Card, whereas the "medical staff", including the doctor and nurse, are paid salaries by "ROYAL CARIBBEAN" to work in the "medical centers."

35. That the medical staff in this case, including its doctor and nurse, were given uniforms to wear which include name tags, and which have the "ROYAL CARIBBEAN" name

and logo. Said uniforms were required by "ROYAL CARIBBEAN" to be worn by the doctor and nurse.

36. That the doctor is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers.

37. That both the ship's doctor and the nurse were held out to the passengers by "ROYAL CARIBBEAN" as being members of the ship's crew.

38. That the Defendant put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship.

39. That the cruise line represents to immigration authorities that the physician and nurse are members of the ship's crew.

40. That both the ship's doctor and nurse are permitted to eat with the ship's crew.

41. That the ship's physician and nurse provide services in the ship's "medical centers" and the Plaintiff was required to go to the ship's medical center to be seen for her injuries.

42. That at the time of Plaintiff's injury, the Plaintiff was seen and briefly examined by the ship's nurse and/or physician.

43. That based on the foregoing, the Plaintiff believed, and was reasonable in her belief, that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of the Defendants, and was never given any reason to believe otherwise.

44. That the Plaintiff relied to her detriment on her belief that the doctor and nurse were direct employees or actual agents of the Defendant in that the Plaintiff followed the advice

of the doctor and/or nurse who did not seek any further medical testing, x-rays, or evaluation while aboard the ship, that she relied on the ship's doctor and/or nurse.

45. That as a result of the Plaintiff's reliance upon the ship's medical staff, the advice of the doctor and/or nurse who did not seek any further medical testing, x-rays, or evaluation while aboard the ship, that she relied on the ship's doctor and/or nurse. Plaintiff's status was not properly diagnosed and her condition was aggravated.

46. That the Defendant is liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of *respondeat superior*.

47. Defendant, ROYAL CARIBBEAN, by and through the acts of its employees or agents, was negligent, in one or more of the following ways:

   a. in failing to properly assess the condition of Plaintiff; and/or,

   b. in allowing a nurse to make the initial assessment; and/or,

   c. in failing to have a doctor assess the patient; and/or,

   d. in failing to timely diagnose and appropriately treat the patient; and/or,

   e. in failing to order appropriate diagnostic x-rays or scans to further assess the degree of her injury; and/or,

   f. in failing to obtain consultations with appropriate specialists; and/or,

   g. in failing to immobilize the Plaintiff's spinal injury; and/or,

   h. in failing to properly monitor the patient; and/or,

   i. in deviating from the standard of care for patients in Plaintiff's circumstances, who had suffered a significant spinal injury; and/or,

   j. in failing to rapidly diagnose and manage Plaintiff's spinal injury; and/or,

48. That as a direct and proximate result of the negligence of the Defendant, as described above, the Plaintiff's condition was aggravated and she did not receive appropriate medical care for days, resulting in an increase of Plaintiff's injury.

49. That had PATRICIA Mc DONALD received the appropriate care and treatment, it is more likely than not that she would not have suffered such a debilitating injury.

50. That as a result of the negligence of the Defendant, as heretofore described, Plaintiff was injured in and about her body and extremities and suffered pain, mental and emotional distress and anguish therefrom; incurred medical expense and physical handicap and a loss of the ability to enjoy life; suffered a loss of earnings and loss of earning capacity, suffered an aggravation of a pre-existing condition, suffered a loss of enjoyment of the cruise and a loss of ability to enjoy life. Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses in the future.

51. The conduct of Defendants, as described above, directly and proximately caused the injuries and damages to Plaintiff, as follows:

   a. Plaintiff has suffered and will continue to suffer bodily injury, physical pain and suffering, mental anguish, disability, disfigurement, physical impairment, inconvenience, and loss of capacity for the enjoyment of life;

   b. Plaintiff has incurred medical and pharmaceutical expenses and will continue to incur such expenses as long as her condition continues;

   c. Plaintiff suffered an aggravation of a pre-existing condition; and

   d. Plaintiff has suffered lost wages, impairment of earning capacity in the future, and all other damages specified in the Eleventh Circuit Pattern Standard Jury Instructions.

**WHEREFORE**, PATRICIA Mc DONALD, demands judgment against the Defendant, ROYAL CARIBBEAN, a Panamanian corporation, d/b/a ROYAL CARIBBEAN CRUISE LINES, for compensatory damages, including pre-judgment interest, costs, and all damages

allowable by law and further demands trial by jury of all issues so triable as a matter of right, as well as any further relief as this Court deems just and appropriate.

## **COUNT III – APPARENT AGENCY OF MEDICAL STAFF**

52. Plaintiff adopts and realleges each and every allegation contained in paragraphs 1-51, as though fully set forth herein.

53. That at all times material, Defendant, ROYAL CARIBBEAN, held out its medical staff, including its doctors and nurses, as being its employees who work in the Defendant's "medical centers" on the vessel. That the Defendant, ROYAL CARIBBEAN, promotes its medical staff and represents them as being their employees through brochures, internet advertising, and on the vessel. That ROYAL CARIBBEAN held out its staff, including doctor and nurse, as being direct employees or its actual agents.

54. That the Defendant, ROYAL CARIBBEAN, promotes the idea that the medical staff who work in its "medical centers" are employed by the cruise line a part of a marketing tool to induce passengers such as the Plaintiff to buy cruises on its ships, particularly because the cruise line goes to various foreign ports which may not have adequate medical care.

55. That the Defendant, ROYAL CARIBBEAN, manifested to the Plaintiff in this case that its medical staff were acting as its employees and/or apparent agents in various ways, including but not limited to the following:

    a. The doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers;"

    b. That the "medical centers" are owned and operated by ROYAL CARIBBEAN, which pays to stock to the "medical centers" with all supplies, various medicines and equipment; and,

    c. That the passenger is billed directly by ROYAL CARIBBEAN through the passengers "Sail and Sign Card," whereas the "medical staff,"

including doctor and nurse, are paid salaries by ROYAL CARIBBEAN to work in the "medical centers."

56. That the medical staff in this case, including doctor and nurse, were given uniforms to wear which include name tags, and which have the ROYAL CARIBBEAN name and logo. Said uniforms were required by ROYAL CARIBBEAN to be worn by doctor and nurse.

57. That the doctor is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers.

58. That both doctor and nurse were held out to the passengers by ROYAL CARIBBEAN as being members of the ship's crew.

59. That the Defendant, ROYAL CARIBBEAN, put the ship's doctor and nurse under the command of the ship's superior officers, including the Master of the ship.

60. That the cruise line represents to immigration authorities that the doctor and nurse are members of the ship's crew.

61. That both the ship's doctor and nurse are permitted to eat with the ship's crew.

62. That the ship's doctor and nurse provide services in the ship's "medical centers" and the Plaintiff was required to go to the ship's medical center to be seen for her injuries.

63. That at the time of Plaintiff's injury, the Plaintiff was seen and briefly examined by the ship's nurse and/or physician.

64. That based on the foregoing, the Plaintiff believed, and was reasonable in her belief that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of the Defendant, and was never given any reason to believe otherwise.

65. That the Plaintiff relied to her detriment on her belief that the doctor and nurse were direct employees or actual agents of the Defendant in that the Plaintiff followed the advice of the nurse and/or doctor who did not seek any further medical testing or evaluation.

66. That the Defendant, ROYAL CARIBBEAN, is liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

67. The conduct of Defendants, as described above, directly and proximately caused the injuries and damages to Plaintiff, as follows:

   a. Plaintiff has suffered and will continue to suffer bodily injury, physical pain and suffering, mental anguish, disability, disfigurement, physical impairment, inconvenience, and loss of capacity for the enjoyment of life;

   b. Plaintiff has incurred medical and pharmaceutical expenses and will continue to incur such expenses as long as her condition continues;

   c. Plaintiff suffered an aggravation of a pre-existing condition; and

   d. Plaintiff has suffered lost wages, impairment of earning capacity in the future, and all other damages specified in the Eleventh Circuit Pattern Standard Jury Instructions.

**WHEREFORE**, the Plaintiff demands Judgment against the Defendant for economic damages in the past and in the future including but not limited to loss of wages and income, loss of the ability or potential to earn money in the future, medical expenses including but not limited to the expense of physicians, hospitalization, medical and nursing care and treatment, surgical procedures, and physical therapy, and non-economic damages in the past and in the future including but not limited to pain, suffering, disability, physical impairment, loss of important bodily functions, scarring, disfigurement, mental anguish, and loss of capacity for the enjoyment of life, all court costs, all interest under the maritime law or otherwise which accrues

from the date of the incident described herein, and demands trial by jury of all issues so triable as a matter of right, and any and all other damages which the Court deems just or appropriate.

Dated this 8th day of June, 2016.

        ROBERT L. GARDANA, P.A.
        Attorney for Plaintiff
        12350 SW 132nd Court, Suite 204
        Miami, FL 33186
        Telephone: 305-358-0000
        Facsimile: 305-358-1680
        E-Mail: Gardanalaw@gmail.com

        By: /s/ *Robert L. Gardana*
        Robert L. Gardana, Esq.
        Florida Bar No.: 279668